IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TYLER KLINGENSMITH                                              PLAINTIFF

v.                                    Civil No. 6:19-CV-06126

INTERNAL PAROLE OFFICER "JANE"                      DEFENDANTS
TAYLOR (Parole Officer); DAWN
VANDIVER (Parole Board Secretary); DR.
SELLS (Unit Psychologist, Ouachita River
Correctional Unit "ORCU"); DONNA
DYCUS (ORCU Unit Coordinator);
CLAYTON DEBOER (ORCU Mental Health
Case Manager); MRS. HAMER (ORCU
Mental Health Supervisor); OFFICER
BLEADSOE (ORCU): RORY GRIFFIN
(Director of Health and Correctional
Services); WARDEN G. EARL (ORCU);
PAROLE OFFICER WEST; JENNINGS
(a/k/a Jenkins); MRS. FULLER; MAJOR
CHRISTOPHER (ORCU/ADC); MRS.
HOSSMAN; LT. DELANEY (ADC
Security/ORCU);  ASSIST. WARDEN BALL
(ORCU); DEXTER PAYNE (ADC Director);
MARK JORDAN (Bentonville PD
Detective); LT. HUNTER (ADC
Security/ORCU), and CUMMINGS (ORCU)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to

the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Hon. Robert T. Dawson, United States

District Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison

Litigation Reform Act ("PLRA").  Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to

screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

## I.  BACKGROUND

Plaintiff filed his Complaint on November 1, 2019.  (ECF No. 1).  On December 18, 2019, he filed a Motion to Amend his Complaint, which was granted on December 19, 2019.  (ECF Nos. 6, 7).  Plaintiff filed his First Amended Complaint on December 23, 2019.  (ECF No. 9).  When review of the First Amended Complaint revealed that it was not submitted on the Court-approved form as directed, and was also 215-pages in length, the Court entered an Order directing Plaintiff to file a Second Amended Complaint.  (ECF No. 10).  Plaintiff filed his Second Amended Complaint on March 16, 2020.  (ECF No. 11).  On March 20, 2020, the Court entered an Order directing Plaintiff to submit a Third Amended Complaint to address continued deficiencies in his Second Amended Complaint.  (ECF No. 12).  Plaintiff did so on April 6, 2020.  (ECF No. 13).

Plaintiff raises his claims in three groups.  He characterizes all three groups of claims as a conspiracy amongst the Defendants to violate his constitutional rights.  (ECF No. 13 at 4-7, 8).  He is currently incarcerated in the Arkansas Department of Correction ("ADC") North Central Unit, but his claims center on his time in the ADC Ouachita River Unit ("ORCU").

He first alleges that, from August 27, 2018, through September 1, 2019, Defendants Deboer, Dycas, Hamer, Fuller, Bleadsoe, Payne, Griffin, and Hossman violated his constitutional rights by misclassifying him as a sex offender and attempting to force him into the RSVP Program. (*Id*. at 4, 8).  Plaintiff alleges that on August 27, 2018, inmate classification managers Hossman, Payne, and Griffin misclassified him as a "C3-Med-20" sex offender.  (*Id*. at 8).  Plaintiff states he is not a sex offender.[1]  As a result of the misclassification, Defendants Deboer (Mental Health case

---

[1] Research by the Court indicates Plaintiff plead guilty to charges of Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images or Recordings, and

manager), Dycus (Unit Coordinator), and Sells (Unit Psychologist), applied an RSVP Program referral to him. (*Id*.). Fuller removed him from the Think Legacy rehabilitation program without a hearing and sent him to ORCU for the RSVP Program. (*Id*.). As a result of this transfer, he lost his "tablet, rehabilitation, lower level prison, more yard time and other actions." (*Id*.). On January 16, 2019, Deboer completed and sent the false RSVP Program referral to Defendant Dycus after Plaintiff filed a grievance against Deboer for failing to provide mental health treatment for a sexual assault which occurred in the Benton County Detention Center. (*Id*.). Dycus applied the RSVP referral to Plaintiff several times, in violation of "directive policy and regulations." (*Id*.). Sells, using a "threatening manner," tried to convince Plaintiff that he was a sex offender, or should be, and tried to force him into RSVP. Seller contacted "SOCNA"[2] and was told that Plaintiff did not qualify for RSVP. (*Id*.). Dr. Sells then failed to remove the referral, thereby attempting to "cover up" the unlawful actions of Deboer, Dycus, and Fuller. (*Id*. at 9). Bledsoe and Hamer were aware of the conspiracy and failed to take any corrective action. (*Id*)

Plaintiff alleges that Fuller, Sells, Deboer, and Dycus conspired to force Plaintiff into the RSVP Program, which resulted in a "stipulation" by the Parole Board on July 24, 2019. This stipulation resulted in a "one-year denial." The Court will interpret this statement to mean that Plaintiff was denied parole eligibility for one year. Plaintiff alleges that the denial placed his life and liberty "into jeopardy" and violated his constitutional rights. (*Id*.).

For his second group of claims, Plaintiff alleges that from June 10, 2019, through September 30, 2019, Defendant Taylor, West, Cummings, Jennings, and Jordan conspired to

---

Violation of a Protective Order on August 16, 2018, in Case No. 04CR-18-142, Benton County Circuit Court. Plaintiff was represented by an attorney. The Sentencing Order for the case did not identify him as a sexually dangerous person or require him to register as a sex offender. (Arkansas Court Connect, last accessed April 10, 2020).

[2] The Sex Offender Community Notification Assessment Program. This program is part of the ADC, but the Sex Offender Assessment Committee ("SOAC") reviews and approves guidelines for the program. (Information available at www.arkleg.state.ar.us).

"sabotage his parole release inquiry."  (*Id*. at 9-10).  Plaintiff alleges that on March 23, 2018, Jennings (ACC Field Report Officer) and Jordan (Bentonville Police Department Detective) appeared at his court hearing.  (*Id*. at 9).  Jennings submitted a false and inaccurate parole field report, which included crimes and circumstances which Plaintiff never went to trial for and was never convicted of.  This report was considered in his parole decision and resulted in a one-year denial of parole and a stipulation that he participate in programs not required for his charges and convictions.  (*Id*.).

Plaintiff alleges that, prior to his July 23, 2019, parole hearing, Taylor (Internal Parole Officer) and West (Parole Officer) failed to give him notice of his hearing, failed to provide a personal interview, failed to provide him opportunities given to other inmates such a letters of support from family and employers, failed to provide the opportunity to request counsel be present, and failed to give him a copy of the victim protest letter.  (*Id*. at 10).  Jordan submitted a false victim impact statement to the Parole Board on July 17, 2019.  (*Id*.).

Plaintiff alleges Vandiver (Parole Board Secretary) held a parole hearing without a complete set of files.  Plaintiff notes that files from both ORCU and the Grimes Unit should have been used, but the ORCU files were not at the hearing.  (*Id*.).  Vandiver told him that "we take stalking serious[ly]" and recommended a one-year denial of parole.  (*Id*.).  She also stipulated that he participate in the RSVP program, when he is not a sex offender.  (*Id*.).  Plaintiff filed a 21-page reconsideration brief and was denied.  (*Id*.).

For his third group of claims, Plaintiff alleges that from June 10, 2019, through December 6, 2019, Defendants Delaney, Christopher, Ball, Hossman, Earl and Hunter violated his constitutional rights based on his placement in administrative segregation and subsequent release into Housing One.  (*Id*. at 6).  Plaintiff alleges Delaney and Hunter (both ADC guards) conspired

to inflict cruel and unusual punishment on him by placing him in administrative segregation without any due process.  Plaintiff alleges Delaney laughed at him after he was attacked on October 3, 2019,[3] and violated policy by not investigating the incident.  (*Id*. at 11).  Instead, Plaintiff was placed in a cell from October 3, 2010, until October 24, 2019. (*Id*.).  This cell had no water, the temperature dropped below 39 degrees on several occasions, he was not provided with thermals, and the lights were left on around the clock.  (*Id*.).  Plaintiff alleges Delaney and Hunter knew about the cell conditions, failed to investigate the attack, and placed him in the cell after the attack in a retaliatory effort to "preclude [his] advancement of civil suits."  (*Id*.).

Plaintiff sent several notices and grievances to Major Christopher and Wardens Earl and Ball.  (*Id*.)  The notices stated a group of people were about to attack Plaintiff.  (*Id*.).  The grievances and notices were stamped, and Plaintiff received responses for them, but no investigations were opened.  (*Id*.).  The notices and grievances were sent on October 17, 21, 25, and 31, 2019.  Delaney, Mendoza, and Whitley made threats against Plaintiff and arranged for him to be let out of "the hole" early because he filed a grievance and a lawsuit.  Plaintiff filed a lawsuit against the ADC on November 1, 2019.  That same day he was released from "the hole" early. (*Id*.).  Plaintiff sent a notice to Defendant Hossman (Inmate Classification Officer at ORCU) that he could not go to Housing One.  Hossman responded on November 1, 2019, before he was attacked, but he was not relocated out of Housing One.  Plaintiff was then attacked by two people, resulting in lacerations, a concussion, loose teeth, a "busted" lip, blackeyes, and bruised ribs.  (*Id*.). Plaintiff does not state the date that he was allegedly attacked or if the two people who attacked him were those mentioned in his notices.  Plaintiff now must be housed in a PC barracks.  Plaintiff

---

[3] A review of Plaintiff's ADC record indicates Plaintiff received a major disciplinary charge for Battery on October 3, 2019, and another charge for Insolence to a Staff Member on January 29, 2020.  (Information available at https://adc.arkansas.gov/).

alleges his early release and placement in Housing One was a conspiracy by Hossman, Delaney and Christopher to deter Plaintiff from filing grievances and lawsuits.

Plaintiff notified Defendant Hamer (ORCU Mental Health Supervisor) on October 26, 2019, that he was going to sue the ADC over his classification and RSVP Program referral. (*Id*.). He notified Hamer that he did not want to go to Housing One because he feared for his life, but she told him "[t]hat's overstepping my bounds," and "her dep[artment] doesn't get involved in housing." (*Id*.).

Plaintiff proceeds against all Defendants in both their official and personal capacities. (*Id.* at 4, 5, 6). He seeks compensatory and punitive damages, and requests that criminal charges be brought against Defendants. (*Id.* at 7).

## II.  LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

6

## III.  ANALYSIS

### A.      Official Capacity Claims

Plaintiff's official capacity claims are subject to dismissal, as all Defendants are identified as ADC employees.  States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose,* 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  "This bar exists whether the relief sought is legal or equitable."  *Williams v. Missouri,* 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain,* 478 U.S. 265, 276 (1986)).  "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983."  *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan,* 440 U.S. 332, 342 (1979)).  "A suit against state employees in their official capacities is the functional equivalent of a suit against the State." *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2013).  As Defendants are employees of the ADC, Plaintiff's official capacity claims against them are subject to dismissal.

### B.      Misclassification as a Sex Offender and Placement in Housing One

Plaintiff alleges he was misclassified as a sex offender, and as a result was transferred to ORCU without a hearing in order to participate in the RSVP Program.  This resulted in his withdrawal from a rehabilitation program, housing him in a higher-security Unit, and the loss of other items and privileges.  He also alleges he was placed in Housing One at ORCU after he stated he could not stay in that Unit because he feared for his safety.  These claims are subject to dismissal.

Federal courts, including the Supreme Court, have consistently held that inmates are not entitled to due process protections in relation to discretionary transfers between prison facilities. *See Montayne v. Haymes,* 427 U.S. 236, 242–43 (1978) (finding no constitutional right to be housed in a particular state prison); *Meachum v. Fano,* 427 U.S. 215, 224 (1976) (holding that no

7

due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate). This means that prisoners have no inherent constitutional right to placement in any particular prison; to transfer to a particular prison; to a particular security classification; or, to a specific housing assignment. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."). In addition, the Eighth Circuit has held that inmates do not have a constitutional right to a particular prison job or inmate classification. *Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005).

Accordingly, Plaintiff's claims against Defendants Deboer, Dycas, Hamer, Fuller, Bleadsoe, Payne, Griffin, Hossman, and Seller for his misclassification, Unit transfer, or housing assignment should be dismissed as frivolous.

### C.    Parole Officers and Parole Denial

Plaintiff alleges Defendants Taylor, West, Cummings, Jennings, and Jordan conspired to "sabotage his parole release inquiry." He alleges Vandiver held his parole hearing without adequate documentation. Jennings, Taylor, West, and Vandiver are parole officers, and therefore immune from suit. Parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole. *See Anton v. Getty,* 78 F.3d 393, 396 (8th Cir. 1996); *Littles v. Board of Pardons & Paroles Div.,* 68 F.3d 122, 123 (5th Cir. 1996) (per curiam). Thus, Jennings, Taylor, West, and Vandiver are immune to claims related to Plaintiff's parole hearing or parole denial.

In addition, it is well settled that inmates do not have a constitutionally protected liberty interest in the possibility of parole or probation as required for a due process claim. *Hamilton v.*

8

*Brownlee,* 237 F. App'x 114 (8th Cir. 2007).  In *Hamilton,* the court held "Arkansas parole statutes do not create a protectable liberty interest in discretionary parole decisions…" *Id.* at 115.  Absent a protectable liberty interest, due process protections are not implicated.  *Senty-Haugen v. Goodno,* 462 F.3d 876, 886 (8th Cir. 2006) (first question in procedural due process claim is whether plaintiff has been deprived of protected liberty or property interest).  Without a protectable liberty interest there is no due process claim.  *Id.* at 886.  Accordingly, Plaintiff's claims against Cummings and Jordan related to Plaintiff's parole hearing or parole denial should be dismissed as frivolous.

### D.    Due Process for Placement in Administrative Segregation

Plaintiff alleges Defendants Delaney and Hunter placed him in administrative segregation after an attack incident, without any investigation of the incident or other due process, from October 3 until October 24, 2019.  This claim is subject to dismissal.

In order to prevail on a due process claim, Plaintiff must first demonstrate that he was deprived of life, liberty, or property by government action.  *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003).  As noted by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), although convicted prisoners do not shed all constitutional rights at the prison gate, lawful incarceration brings about the necessary limitation of many privileges and rights justified by the consideration underlying our penal system.  Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.  *Id.* at 485.  "To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed."  *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin*, 515 U.S. at 484).

9

Plaintiff's ADC record indicates that he received a major disciplinary charge for Battery on October 3, 2019, the same day Plaintiff alleges he was placed in administrative segregation. Simply being placed in disciplinary segregation is not an "atypical and significant hardship…in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, and thus is not the type of deprivation that creates a protected liberty interest. *See Phillips*, 320 F.3d at 847 ("We have consistently held that a demotion to segregation, *even without cause*, is not itself an atypical and significant hardship.") (emphasis added).

Nor does the 21 days that Plaintiff spent in segregation convert his claim to one of constitutional dimension. The Eighth Circuit has held that much longer periods in segregation than that experienced by Plaintiff, with loss of privileges, does not implicate a liberty interest triggering due process protections. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Rahman X*, 300 F.3d at 974 (inmate's placement in administrative segregation for 26 months without a disciplinary charge or conviction and during which inmate could not watch television in his cell did not "demonstrate that his liberty interest was curtailed"); and, *Furlough v. Brandon*, 2009 WL 4898418 (E.D. Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months).

Accordingly, Plaintiff's claim that Defendants Delaney and Hunter placed him in administrative segregation without adequate due process should be dismissed as frivolous.

### E.     Conditions of Confinement

Plaintiff alleges that his segregation cell lacked water, the temperature dropped below 39 degrees Fahrenheit on several occasions, he was not provided with thermals, and the lights were

left on around the clock.  Plaintiff alleges Delaney and Hunter were aware of these conditions when they placed him there.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis,* 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges . . ." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)).  The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities.  *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton,* 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

As with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation.  This injury must be greater than *de minimis*.  *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Plaintiff's allegation that there was no water in his cell does not state a cognizable claim under § 1983.  Access to a sufficient quality and quantity of water for drinking and basic personal hygiene is, of course, a minimal life necessity.  *See e.g., Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001) (unpublished) (no disagreement that basic personal hygiene falls within the minimal civilized measure of life's necessities); *Spires v. Paul*, 581 F. App'x 786, 792-94 (11th Cir. 2014) (housing an inmate in a cell without potable water for several days and forcing him to drink from the toilet to survive stated an Eighth Amendment violation).  But, "[n]othing in the

Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell . . ." *Jelinek v. Roth*, 33 F.3d 56, *2 (7th Cir. 1994) (unpublished) (plumbing in cell that produced only water contaminated with rust that was undrinkable and unsuitable for bathing does not implicate the Eighth Amendment); *see also, Smith v. Copeland*, 892 F.Supp. 1218, 1230 (E.D. Mo. 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements"), *aff'd*, 87 F.3d 265 (8th Cir. 1996); *Narducci v. Fields*, 62 F.3d 1428 (10th Cir. 1995) (unpublished) ("a lack of light, a lack of running water, poor cell ventilation, and placement in an individual cage for outdoor exercise" did not rise to level of constitutional violation); *Downs v. Carter*, 2016 WL 1660491, *8 (N.D. Illinois) ("There is no constitutional right to water on demand.").

Plaintiff does not allege he was denied water to drink or that he was denied the opportunity for basic personal hygiene.  Instead, he alleges only that there was no water in his cell.  Accordingly, Plaintiff's claim concerning the lack of water in the cell should be dismissed as frivolous.  His claims against Delaney and Hunter concerning the temperature of the cell, the lack of warm clothing, and the lights remaining on around the clock should remain for further consideration.

### F.     First Amendment Retaliation

Plaintiff alleges that Defendants Delaney and Hunter placed him in administrative segregation to "preclude [his] advancement of civil suits."  Plaintiff further alleges his early release and placement in Housing One was a conspiracy by Hossman, Delaney and Christopher to deter Plaintiff from filing grievances and lawsuits.  Plaintiff alleges that Delaney, Mendoza, and Whitley made threats against Plaintiff and arranged for him to be let out of "the hole" early, and placed in

Housing One, because he filed a grievance and a lawsuit.  Finally, Plaintiff alleges that Deboer completed and sent the false RSVP referral after Plaintiff filed a grievance against him for failing to provide mental health treatment for a sexual assault Plaintiff alleges occurred while he was in the Benton County Detention Center.  The Court interprets these allegations as claims of retaliation against Plaintiff for the exercise of his First Amendment rights.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and, (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).  Further, courts have recognized that prison officials must have broad administrative authority.  *Graham,* 89 F.3d at 79.  For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care."  *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable).  *See also Turner v. Mull,* 784 F.3d 485 (8th Cir. 2015) (mere timing of events alone does not establish the requisite causal link); *Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (Speculative and conclusory allegations cannot support a retaliation claim).

"[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules and regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goof v. Burton*, 7 F. 3d 734, 738 (9th Cir. 1993). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). A prison disciplinary committee's finding that the prisoner committed an actual violation "essentially checkmates" the prisoner's retaliation claim. *Henderson v. Baird*, 29 F.3d 1994 (8th Cir. 1994), *cert. denied,* 515 U.S. 1145 (1995).

Plaintiff's ADC record indicates he received a major disciplinary charge for Battery on October 3, 2019; the same day Plaintiff alleges he was placed in administrative segregation for an attack incident. As he was placed in segregation for an actual violation of ADC rules, his claim that Delaney and Hunter placed him there for filing lawsuits must fail. His claim that Hossman, Delaney, Christopher, Mendoza and Whitley released him into Housing One, an allegedly hostile environment, in order to deter him from filing grievances and lawsuits, should remain for further review. Likewise, his claim that Deboer activated the false RSVP referral after Plaintiff filed a grievance against him should remain for further review.

### G.    Failure to Protect

Plaintiff alleges Defendants failed to protect him when they released him from administrative segregation on October 24, 2019.[4] He alleges he sent grievances and notices to Major Christopher and Wardens Earl and Ball on October 17, 21, 25, and 31, 2019. The notices

---

[4] Plaintiff's Complaint is inconsistent as to the exact date that he was released from administrative segregation into Housing One. He alleges several times that it was October 24, 2019. At another point he alleges it was on November 1, 2019, the same day he filed a lawsuit. As Plaintiff repeated the date of October 24, 2019, the Court will use this date for the purpose of screening.

stated that a group of people were about to attack him.  He also alleges he sent a notice to Hossman, who responded to him on November 1, 2019, but did not relocate him out of Housing One.  Her response occurred before he was attacked by "two people" on an unspecified date.  Plaintiff alleges he also told Hamer, a Mental Health Supervisor, that he feared for his life in Housing One, but she told him that her department did not interfere in housing issues.  Plaintiff does not state whether the two people who attacked him were part of the same group of people he identified in the notices. Keeping in mind that a *pro se* Plaintiff's Complaint should be held to less stringent standards, the Court will infer that the two individuals who attacked him were named in his notices, but only for the purpose of screening.  Plaintiff's failure to protect claim against Defendants Christopher, Earl, Ball, Hossman, and Hamer, should therefore remain for further review.

## IV.  CONCLUSION

Accordingly, for the reasons and upon the authorities discussed above, it is recommended that Plaintiff's official capacity claims be DISMISSED WITH PREJUDICE.  It is further recommended that the following personal capacity claims be DISMISSED WITHOUT PREJUDICE:

- Plaintiff's claims against Deboer, Dycas, Hamer, Fuller, Bleadsoe, Payne, Griffin, Hossman, and Seller for his misclassification, Unit transfer, or housing assignment;

- Plaintiff's claims against Taylor, West, Cummings, Jennings, and Jordan in relation to Plaintiff's parole hearing or parole denial;

- Plaintiff's claim that Delaney and Hunter placed him in administrative segregation without adequate due process;

- Plaintiff claims against Delaney and Hunter concerning the lack of water in his segregation cell; and,

- Plaintiff's claim for First Amendment retaliation against Delaney and Hunter for placing him in administrative segregation because he filed lawsuits against the ADC.

Finally, it is recommended that the following personal capacity claims remain for further consideration:

- Plaintiff's conditions of confinement claims against Delaney and Hunter regarding the temperature in his segregation cell, the lack of warm clothing, and the lights being kept on around the clock;

- Plaintiff's First Amendment retaliation claims against Hossman, Delaney, Christopher, Mendoza , Whitley and Deboer; and,

- Plaintiff's failure to protect claim against Christopher, Earl, Ball, Hossman, and Hamer.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of April 2020.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE