IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TYLER KLINGENSMITH                                                    PLAINTIFF

v.                                    Civil No. 6:19-CV-06126

CLAYTON DEBOER, *et. al.*                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro* se

and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the

Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned

for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment on Exhaustion.[1]

(ECF No. 43).

## I.      BACKGROUND

Plaintiff filed his Complaint on November 1, 2019.  (ECF No. 1).  On December 18, 2019,

he filed a Motion to Amend his Complaint, which was granted on December 19, 2019.  (ECF Nos.

6, 7).  Plaintiff filed his First Amended Complaint on December 23, 2019.  (ECF No. 9).  When

review of the First Amended Complaint revealed it was not submitted on the Court-approved form

as directed, and was also an excessive 215-pages in length, the Court entered an Order directing

Plaintiff to file a Second Amended Complaint.  (ECF No. 10).  Plaintiff filed his Second Amended

Complaint on March 16, 2020.  (ECF No. 11).  On March 20, 2020, the Court entered an Order

---

[1] As addressed in footnote two of Defendants' Brief, Deboer also addresses the merits of the retaliation claim against him without benefit of discovery.  In the event the case is not dismissed based on Plaintiff's failure to exhaust his administrative remedies, he reserves the right to renew his motion for summary judgment on the merits after discovery. (ECF No. 44 at 1, n. 2).

directing Plaintiff to submit a Third Amended Complaint to address continued deficiencies in his Second Amended Complaint. (ECF No. 12). Plaintiff did so on April 6, 2020. (ECF No. 13).

Plaintiff raises his claims in three groups. He characterizes all three groups of claims as a conspiracy among the Defendants to violate his constitutional rights. (ECF No. 13 at 4-7, 8). He is currently incarcerated in the Arkansas Department of Correction ("ADC") North Central Unit, but his claims center on his time in the ADC Ouachita River Unit ("ORCU").

He first alleges that from August 27, 2018, through September 1, 2019, Defendants Deboer, Dycas, Hamer, Fuller, Bleadsoe, Payne, Griffin, and Hossman violated his constitutional rights by misclassifying him as a sex offender and attempting to force him into the RSVP Program. (ECF No. 13 at 4, 8). Plaintiff alleges that on August 27, 2018, inmate classification managers Hossman, Payne, and Griffin misclassified him as a "C3-Med-20" sex offender. (*Id*. at 8). Plaintiff states he is not a sex offender.[2] As a result of the misclassification, Defendants Deboer (Mental Health case manager), Dycus (Unit Coordinator), and Sells (Unit Psychologist), applied an RSVP Program referral to him. (*Id*.). Fuller removed him from the Think Legacy rehabilitation program without a hearing and sent him to ORCU for the RSVP Program. (*Id*.). As a result of this transfer, he lost his "tablet, rehabilitation, lower level prison, more yard time and other actions." (*Id*.). On January 16, 2019, Deboer completed and sent the false RSVP Program referral to Defendant Dycus after Plaintiff filed a grievance against Deboer for failing to provide mental health treatment for a sexual assault which occurred in the Benton County Detention Center. (*Id*.). Dycus applied the RSVP referral to Plaintiff several times, in violation of "directive policy and regulations." (*Id*.). Sells,

---

[2] Research by the Court indicates Plaintiff pleaded guilty to charges of Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images or Recordings, and Violation of a Protective Order on August 16, 2018, in Case No. 04CR-18-142, Benton County Circuit Court. Plaintiff was represented by an attorney. The Sentencing Order for the case did not identify him as a sexually dangerous person or require him to register as a sex offender. (Arkansas Court Connect, last accessed April 10, 2020).

using a "threatening manner," tried to convince Plaintiff that he was a sex offender, or should be, and tried to force him into RSVP. Sells contacted "SOCNA"[3] and was told that Plaintiff did not qualify for RSVP. (*Id*.). Dr. Sells then failed to remove the referral, thereby attempting to "cover up" the unlawful actions of Deboer, Dycus, and Fuller. (*Id*. at 9). Bledsoe and Hamer were aware of the conspiracy and failed to take any corrective action. (*Id*)

Plaintiff alleges that Fuller, Sells, Deboer, and Dycus conspired to force Plaintiff into the RSVP Program, which resulted in a "stipulation" by the Parole Board on July 24, 2019. This stipulation resulted in a "one-year denial." The Court will interpret this statement to mean that Plaintiff was denied parole eligibility for one year. Plaintiff alleges that the denial placed his life and liberty "into jeopardy" and violated his constitutional rights. (ECF No. 13 at 9).

For his second group of claims, Plaintiff alleges that from June 10, 2019, through September 30, 2019, Defendant Taylor, West, Cummings, Jennings, and Jordan conspired to "sabotage his parole release inquiry." (ECF No. 13 at 9-10). Plaintiff alleges that on March 23, 2018, Jennings (ACC Field Report Officer) and Jordan (Bentonville Police Department Detective) appeared at his court hearing. (*Id*. at 9). Jennings submitted a false and inaccurate parole field report, which included crimes and circumstances which Plaintiff never went to trial for and was never convicted of. This report was considered in his parole decision and resulted in a one-year denial of parole and a stipulation that he participate in programs not required for his charges and convictions. (*Id*.).

Plaintiff alleges that prior to his July 23, 2019 parole hearing, Taylor (Internal Parole Officer) and West (Parole Officer) failed to give him notice of his hearing, failed to provide a

---

[3] The Sex Offender Community Notification Assessment Program. This program is part of the ADC, but the Sex Offender Assessment Committee ("SOAC") reviews and approves guidelines for the program. (Information available at www.arkleg.state.ar.us).

personal interview, failed to provide him opportunities given to other inmates (such as letters of support from family and employers), failed to provide the opportunity to request counsel be present, and failed to give him a copy of the victim protest letter. (ECF No. 13 at 10). Jordan submitted a false victim impact statement to the Parole Board on July 17, 2019. (*Id*.).

Plaintiff alleges Vandiver (Parole Board Secretary) held a parole hearing without a complete set of files. Plaintiff notes that files from both ORCU and the Grimes Unit should have been used, but the ORCU files were not at the hearing. (ECF No. 13 at 10). Vandiver told him that "we take stalking serious[ly]" and recommended a one-year denial of parole. (*Id*.). She also stipulated that he participate in the RSVP program, when he is not a sex offender. (*Id*.). Plaintiff filed a 21-page reconsideration brief and was denied. (*Id*.).

For his third group of claims, Plaintiff alleges that from June 10, 2019, through December 6, 2019, Defendants Delaney, Christopher, Ball, Hossman, Earl and Hunter violated his constitutional rights based on his placement in administrative segregation and subsequent release into Housing One. (ECF No. 13 at 6). Plaintiff alleges Delaney and Hunter (both ADC guards) conspired to inflict cruel and unusual punishment on him by placing him in administrative segregation without any due process. Plaintiff alleges Delaney laughed at him after he was attacked on October 3, 2019,[4] and violated policy by not investigating the incident. (*Id*. at 11). Instead, Plaintiff was placed in a cell from October 3, 2010, until October 24, 2019. (*Id*.). This cell had no water, the temperature dropped below 39 degrees on several occasions, he was not provided with thermals, and the lights were left on around the clock. (*Id*.). Plaintiff alleges

---

[4] A review of Plaintiff's ADC record indicates Plaintiff received a major disciplinary charge for Battery on October 3, 2019, and another charge for Insolence to a Staff Member on January 29, 2020. (Information available at https://adc.arkansas.gov/).

Delaney and Hunter knew about the cell conditions, failed to investigate the attack, and placed him in the cell after the attack in a retaliatory effort to "preclude [his] advancement of civil suits." (*Id*.).

Plaintiff sent several notices and grievances to Major Christopher, Warden Earl, and Assistant Warden Ball. (ECF No. 13 at 11). The notices stated a group of people were about to attack Plaintiff. (*Id*.). The grievances and notices were stamped, and Plaintiff received responses for them, but no investigations were opened. (*Id*.). The notices and grievances were sent on October 17, 21, 25, and 31, 2019. Delaney, Mendoza, and Whitley made threats against Plaintiff and arranged for him to be let out of "the hole" early because he filed a grievance and a lawsuit. Plaintiff filed a lawsuit against the ADC on November 1, 2019. That same day he was released from "the hole" early. (*Id*.). Plaintiff sent a notice to Defendant Hossman (Inmate Classification Officer at ORCU) that he could not go to Housing One. Hossman responded on November 1, 2019, before he was attacked, but he was not relocated out of Housing One. Plaintiff was then attacked by two people, resulting in lacerations, a concussion, loose teeth, a "busted" lip, blackeyes, and bruised ribs. (*Id*.). Plaintiff does not state the date that he was allegedly attacked or if the two people who attacked him were those mentioned in his notices. Plaintiff now must be housed in a protective custody barracks. Plaintiff alleges his early release and placement in Housing One was a conspiracy by Hossman, Delaney and Christopher to deter Plaintiff from filing grievances and lawsuits.

Plaintiff notified Defendant Hamer (ORCU Mental Health Supervisor) on October 26, 2019, that he was going to sue the ADC over his misclassification and RSVP Program referral. (ECF No. 13 at 11). He notified Hamer that he did not want to go to Housing One because he feared for his life, but she told him "[t]hat's overstepping my bounds," and "her dep[artment] doesn't get involved in housing." (*Id*.).

Plaintiff proceeds against all Defendants in both their official and personal capacities. (ECF No. 13 at 4, 5, 6). He seeks compensatory and punitive damages, and requests that criminal charges be brought against Defendants. (*Id*. at 7).

Most of Plaintiff's claims were dismissed pursuant to preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA") on May 26, 2020. (ECF No. 18). Four claims remain for further consideration: (1) Plaintiff's conditions of confinement claims against Delaney and Hunter regarding the temperature in his segregation cell, the lack of warm clothing, and the lights being kept on around the clock; (2) Plaintiff's First Amendment retaliation claim against Hossman, Delaney, Christopher, Mendoza and Whitley for allegedly releasing him into Housing One, an allegedly hostile environment, in order to deter him from filing grievances and lawsuits; (3) Plaintiff's First Amendment retaliation claim against Deboer for allegedly activating a false RSVP referral on Plaintiff after Plaintiff filed a grievance against him; and, (4) Plaintiff's failure to protect claim against Defendants Christopher, Earl, Ball, Hossman, and Hamer for his placement into Housing One. (*Id*.).

Defendants filed their Motion for Summary Judgment on Exhaustion on August 27, 2020. (ECF No. 43). Plaintiff filed his Response on October 9, 2020. (ECF Nos. 62, 63). Defendants filed their Reply on October 16, 2020. (ECF No. 64). Plaintiff filed a Response to the Reply on October 26, 2020, and a Supplement to his Response on October 29, 2020. (ECF Nos. 67, 68).

## II.        LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    ANALYSIS

### SUMMARY OF THE ARGUMENTS

Defendants argue summary judgment in their favor is appropriate because Plaintiff failed to exhaust his administrative remedies against any Defendant for any claim in this case prior to filing this lawsuit. (ECF No. 44 at 1). They additionally argue that Defendant Deboer is not authorized to make RSVP referrals, and while Plaintiff was mistakenly referred to RSVP by others, it did not chill his participation in the ADC grievance process. (*Id*. at 1-2).

Plaintiff does not dispute that he failed to exhaust his administrative remedies against any Defendant for any claim in this case prior to filing this lawsuit on November 1, 2019. (ECF Nos. 62, 63, 63-1). Instead, he argues that he is not a prisoner as defined by the PLRA, thus, the PLRA

requirements of administrative exhaustion do not apply to him. (ECF No. 62 at 1). Alternatively, he argues the grievances outlining the claims filed in this case were exhausted by the time he filed his Third Amended Complaint on April 6, 2020. (ECF No. 63-1 at 4, 34).

Finally, Plaintiff raises seven arguments he believes show that the grievance process was unavailable to him:

(1)    He had not met Defendants Hunter or Delaney before, so he did not have their names to place on a grievance. (ECF No. 63 at 1).

(2)    He did not have his eyeglasses after he was attacked on October 3, 2019, so he was unable to read and write. (ECF No. 63 at 1-2).

(3)    He was subjected to so many continuous constitutional violations between August 2019 through December 2019 that he had to prioritize which ones to file because the ADC grievance policy limited him to only three grievances every seven days. (ECF No. 63 at 2).

(4)    He was in fear for his life, so he had to file the Complaint at the same time he filed his grievances to protect his legal evidence. (ECF No. 63-1 at 17).

(5)    The grievance policy was changed from AD 14-16 to AD 19-20, effective August 1, 2019, and he was not notified of the change or ever given the new policy. (ECF No. 63-1 at 39).

(6)    Grievances OR-19-01257 and OR-19-01267 were acknowledged by the ADC, but there were no available remedies for him to exhaust[5]. (ECF No. 63-1 at 36, 88).

(7)    Grievances were returned to him based on procedural ADC grievance policies, even when he was within the correct policy timeframe. (ECF No. 63-1 at 11, 55).[6]

---

[5] Plaintiff also argues that he did not receive a response for these grievances, but this is not supported by the record. *See infra* subsection G.

[6] Plaintiff also asks the Court to review portions of ECF No. 9 in support of one of his arguments. As ECF No. 9 was his First Amended Complaint, and Plaintiff has been repeatedly advised that his First Amended Complaint was

In their Reply, Defendants note that Plaintiff is indeed a prisoner within the meaning of the PLRA, as he was convicted of two felonies and is currently incarcerated in the ADC. (ECF No. 64 at 3). They also argue that none of Plaintiff's arguments support a finding that the grievance process was unavailable to him. (*Id*. at 4). They note that Plaintiff did not allege he tried to exhaust his grievances for the claims in this lawsuit and was prevented from doing so prior to filing his Complaint. They point out that Plaintiff did not even try to exhaust his administrative remedies prior to filing this complaint. (*Id*. at 5). They further point out that changes to the grievance procedure made no material changes to the grievance process. (*Id*.). Finally, they argue that the law is clear that an inmate must exhaust administrative remedies before he initiates an action with the court. (*Id*. at 5-6). Regarding Defendant Deboer, they argue that the record clearly indicates that staff other than Deboer were responsible for mistakenly referring Plaintiff to RSVP, and that Plaintiff will be unable to prove retaliation. (*Id*. at 6-7).

Plaintiff's Response does not appear to introduce any additional arguments, instead reciting caselaw with no reference to the facts of this case. (ECF No. 67). Plaintiff's Supplement also does not appear to introduce new arguments, instead continuing to recite caselaw and make nonsensical statements such as "Attorney General Leslie Rutledge (will she speak the truth) and Kesia Morrison (ineffective and a liar) are representing the defendants in a battle against the LORD

---

superseded by later Amended Complaints, the Court will not review this document. Peppered throughout Plaintiff's 181-pages of Brief and attached documents are also references to "declarations" and "exhibits" unpaired with identifiable docket or page numbers, references to lengthy documents without benefit of page numbers, and citations that bear no relation to the arguments they purportedly support. For example, Plaintiff cites ECF No. 51 in support of an argument concerning the RSVP referral. (ECF No. 63-1 at 32). ECF No. 51 is a text-only order by the Court staying deadlines until this motion for summary judgment has been ruled upon. Plaintiff was advised in the Order directing his Response that "if he intends to rely upon any records or exhibits that have been previously filed with the Court, Plaintiff must specifically refer to those documents by ECF document and page numbers. The Court will not sift through the file to find support for the factual contentions. *See Crossley v. Georgia-Pacific Corp*., 355 F.3d 1112, 1113-14 (8th Cir. 2004) (affirming the grant of summary judgment because a plaintiff failed to properly refer to specific pages in the record that supported his position)." (ECF 47). Although the Court went out of its way to attempt to connect-the-dots and identify documents despite Plaintiff's failure to obey this Order, there are some references that it was simply unable to decipher.

(not the plaintiff)," "Tit-for-Tat to Defendants Reply," "Judge Slow, measure the <u>Facts</u>, and Love Quick[.] Hate should not be ORDINARY!!"  (ECF No. 68 at 1, 3, 7).  The contents of these documents will not be considered further.

## PLRA EXHAUSTION STANDARD

The PLRA mandates exhaustion of available administrative remedies before an inmate files suit.  The PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.* at 219.  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures.  *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

As will be discussed in turn below, Plaintiff has not presented any summary judgment evidence showing that he is exempt from the PLRA exhaustion requirement, that he exhausted any relevant grievances prior to filing this lawsuit, or that any PLRA exhaustion exception applies.

## A. PLAINTIFF'S STATUS AS A PRISONER

Defendants correctly characterize Plaintiff's argument that he is not a prisoner as "nonsensical and unavailing." (ECF No. 64 at 3). The PLRA defines a "prisoner" as "any person incarcerated in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Plaintiff is incarcerated in a state prison facility and is currently serving a sentence for two felony convictions: stalking in the second degree and terroristic threatening in the first degree. (ECF No. 16 at 30-31) (sentencing order). There is no question of either law or fact that Plaintiff is a prisoner within the meaning of the PLRA.

## B. EXHAUSTION OF GRIEVANCES PRIOR TO THIRD AMENDED COMPLAINT

Plaintiff's argument that he exhausted at least some grievances regarding the remaining issues in this case prior to filing his Third Amended Complaint is without merit. Both the plain language of the PLRA and the Eighth Circuit's interpretation of that language require a prisoner to exhaust administrative remedies before commencing a lawsuit in federal court. Section 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Eighth Circuit has expressly interpreted this language to require that an inmate "must exhaust administrative remedies *before* filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in

original); *see, e.g.*, *Pinder v. McDowell*, 5:14-CV-359-JM-BD, 2018 WL 2225273, at *3 (E.D. Ark. Apr. 18, 2018), *report and recommendation adopted*, 5:14-CV-359-JM-BD, 2018 WL 2223328 (E.D. Ark. May 15, 2018) ("The failure to exhaust before filing a complaint cannot be cured by exhausting an issue, then filing an amended complaint.").

### C.  LACK OF EYEGLASSES

Plaintiff next argues that from October 3 through November 1, 2019, he was without his eyeglasses and therefore could not read or write.  (ECF No. 63 at 1-2).[7]  Plaintiff cites to his Exhibits 112 and 113 in support of his argument.  Exhibit 112 is an inmate request form for glasses dated October 22, 2019.  (ECF No. 63-1 at 120).  Exhibit 113 is Grievance OR-19-01204, dated October 15, 2019.  (ECF No. 63-1 at 121).  Plaintiff grieved that he needed new glasses.  The response to this grievance states he was advised to submit a sick call for new glasses, which he failed to do.  His optometry consult was November 22, 2019.  (*Id*.).  While Plaintiff points to these documents to support his allegation that he was without eyeglasses, these documents also demonstrate Plaintiff's ability to prepare and submit such documents in the prison system, and he does not allege that someone else assisted him in preparing these documents.

Plaintiff also filed his 75-page handwritten initial Complaint with this Court on November 1, 2019.  (ECF No. 1).  It was signed by Plaintiff on October 23, 2019.  (*Id*. at 70).  And, according to the ADC list of grievances submitted to the Court (ECF 43-3), Plaintiff filed 13 grievances between October 14, 2019 and November 22, 2019, the date of his optometry consult.  Again, Plaintiff does not allege that someone else wrote that Complaint or the 13 grievances for him.  Thus, Plaintiff's own submissions to this Court contradict his allegations that he was unable to

---

[7] A disciplinary hearing and appeal letter indicate Plaintiff engaged in a fight with another inmate on October 3, 2019. (ECF No. 16 at 178-79).

read and write, or that he was unable to file grievances (regardless of his visual capabilities), from October 3 through November 1, 2019.

### D. FILING PRIOR TO EXHAUSTION TO PRESERVE LEGAL EVIDENCE

Plaintiff also argues that he was in fear for his life, so it was necessary for him to file his initial Complaint prior to exhausting his grievances so he could preserve his legal evidence. (ECF No. 63-1 at 17). He cites *Hammett v. Cofield*, 681 F.3d 945 (8th Cir. 2012) in support of this argument. Plaintiff's reliance on this case is misplaced. *Hammett* held that grievances which could have been denied by the prison for procedural deficiencies may be considered exhausted if the prison nonetheless decided the grievances on the merits. *Id*. at 947-48. Further, the *Hammett* court noted that the mere fact that several of the inmate's complaints were either denied or unexhausted due to the inmate's failure to follow procedural requirements did not demonstrate that the process was either unavailable or fundamentally unfair. (*Id*. at 948-49). The Court can discern no support in this case for Plaintiff's argument that he needed to file his initial Complaint prior to exhaustion to preserve his legal evidence. To the contrary, the case supports Defendants' arguments in this case. Further, Plaintiff points to no grievances which were relevant to the remaining claims in this case, were procedurally deficient, were nonetheless addressed on the merits by the ADC, and were exhausted before he filed this case.

At the same time, Plaintiff expressly alleges that he also sent letters and evidence to "to his attorney and friend at the sheriffs [sic] office in Bentonville, AR." (ECF No. 63-1 at 17). Thus, assuming *arguendo* that Plaintiff's concern about preserving evidence has any validity, it appears he had other methods of protecting his legal evidence. Once again, Plaintiff's allegations are internally contradictory.

### E. ADOPTION OF NEW GRIEVANCE POLICY (AD-19-20)

Plaintiff argues the ADC adopted a new grievance policy on August 1, 2019, switching from AD 14-16 to AD 19-20, and that he was never notified of or given a copy of the policy. (ECF No. 63-1 at 39, 55). Plaintiff cites his Exhibits 116 through 118 in support of his argument. Plaintiff's Exhibit 118 is the Law Library Index list of ADC policies. (ECF No. 63-1 at 127-31). This Index does incorrectly list AD 14-16 as the current grievance policy as of June 13, 2020. (ECF No. 63-1 at 129-30). Plaintiff cites Exhibits 116 and 117 as evidence that he requested AD 19-20 and was refused a copy of the policy. A review of these documents indicates that while he requested several other documents, AD 19-20 was not in either of these requests. (ECF No. 63-1 at 125-26). In their Reply, Defendants argue that the changes to the grievance procedure between AD 14-16 and AD 19-20 made no material changes to the grievance process. (ECF No. 64 at 5). A word-by-word digital comparison of these two grievance policies by the Court confirms that there were no changes made that would have prevented Plaintiff from exhausting his administrative grievances. Further, Plaintiff made no allegations and provided no summary judgment evidence to identify any grievance which was not exhausted because he was allegedly ignorant of the policy change. While it would behoove the ADC to maintain its library index accurately given the importance of exhaustion under the PLRA, Plaintiff may not rely on the mere fact of the policy change or the inaccurate list to excuse his failure to exhaust his administrative remedies.

### F. PROCEDURAL DENIALS OF GRIEVANCES

Plaintiff identifies four incidents concerning ADC procedural grievance policies, which he argues are evidence that Defendants refused to file his grievances, thus making the process unavailable to him.

14

First, he argues that he could not be required to name Hunter or Delaney when they placed him in East Isolation on October 3, 2019, because he had never met them before. (ECF No. 63 at 1). Thus, he could not know who to name on the grievance. (*Id.*). Plaintiff does not identify any grievances which were aimed at Delaney and Hunter for their actions on that date but were denied because they were not specifically named.

Second, he argues that the grievance policy only permits three grievances during each seven-day period. Because he was allegedly subjected to so many continuous constitutional violations between August and December 2019, he was forced to prioritize which grievances he filed because anything over three grievances a week was refused. (ECF No. 63 at 2).

Third, Plaintiff argues Exhibit 104 shows that the grievance coordinator sent back a grievance "out of policy" when he was within the correct timeframe. (ECF No. 63-1 at 11, 55). Plaintiff's Exhibit 104 is SNN-19-00346. (ECF No. 63-1 at 89-90). The response summary to SNN-19-00346 indicates that Plaintiff grieved that he had Sergeant Voss sign his grievance on November 6, 2019, and the grievance coordinator sent it back and refused to file it. The response states that Sergeant Voss signed his grievance on November 6, and therefore had until the end of the day on November 12 to return a response to Plaintiff. Plaintiff submitted the grievance about Voss' lack of response before the response period was over. The grievance was therefore returned to Plaintiff by the grievance department, and he was advised in writing to resubmit it on the proper day. Plaintiff argued with them over the correct calculation of the response period, but apparently never resubmitted the grievance on the day specified. The department never received the resubmitted grievance from Plaintiff, so they could not file it. (*Id.*)

Fourth, in his Statement of Facts, Plaintiff references OR-19-01204 (Exhibit 113) as another example of a rejected grievance. (ECF No. 63-1 at 121). The response indicates that he

15

submitted a request form for glasses and was told to submit a sick call.  He did not do so until October 21, was seen on October 25, and had an optometry consult on November 22, 2019.  The grievance was initially rejected as untimely, but on appeal was found to be with merit due to the delay in the optometry consult.  (*Id*.).

Plaintiff's arguments and examples have no merit.  The Supreme Court has expressly recognized a prison's right to create procedural rules for their individual grievance process.  *See Jones*, 549 U.S. at 218 ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules."). None of the grievance examples Plaintiff identified indicate that he was barred from the grievance process by ADC policies to the extent that grievances were unavailable to him.  One grievance was returned with directions to file it on the proper day, which Plaintiff failed to do.  One grievance was addressed on the merits despite being untimely.  And Plaintiff's limitation to three grievances per seven-day period certainly does not indicate that the grievance process was unavailable. Prisoners have no constitutional right to a grievance process, much less any right to an unlimited grievance process.  *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (no claim when defendants failed to timely and properly respond to a grievance).

### G.  NO AVAILABLE REMEDY TO EXHAUST FOR OR-19-01257 or OR-19-1267

Finally, although his assertions are extremely scattershot, Plaintiff appears to be arguing that his situation meets the standard of unavailability detailed in *Ross v. Blake*, 136 S. Ct. 1850, 1853-54 (2016).  In *Ross*, the Supreme Court recognized at least three circumstances where an administrative process is not "capable of use" and therefore unavailable to exhaust: (1) where "it

operates as a simple dead end—with officers unable or consistently unwilling to provide *any* relief to aggrieved inmates"; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use"; and (3) where "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (citing *Ross*, 136 S. Ct. at 1858-60) (internal quotations and citations omitted). Plaintiff's two arguments center on alleged misrepresentation and intimidation concerning OR-19-01257 and OR-19-1267.

Plaintiff first argues that Warden Earl mislead him by saying no further action would be taken for OR-19-01257 or OR-19-1267. (ECF No. 63-1 at 10, 36, 88). As evidence, Plaintiff points to Exhibit 103, SNN-19-00331. (ECF No. 63-1 at 88). The summary to this grievance states that Plaintiff grieved that he had not received an acknowledgment form for OR-19-1267. Warden Earl replied that Plaintiff had received a response on November 8, 2019, and the "No Further Action" paperwork "was not sent according to AD 19-20." (*Id*.).

Plaintiff's argument lacks merit for three reasons. First, the grievance process was clearly available for exhaustion to Plaintiff, as he was able to pursue each noted grievance to exhaustion. OR-19-01257 was initiated on November 1, 2019 – the same day he filed his Complaint with the Court. (ECF No. 16 at 166-67; 63-1 at 156). This grievance was exhausted on January 6, 2020. (ECF No. 43-3 at 2). OR-19-01267 was initiated on November 2, 2019 - one day after this Complaint was filed. It was exhausted on January 31, 2020. (ECF No. 43-3 at 2; 53 at 14). SNN-19-00331 was initiated on November 17, 2019, and exhausted on January 16, 2020. (ECF Nos. 63-1 at 88; 43-3 at 2). Second, as he filed these grievances either on the same day or after he filed the initial Complaint in the case, nothing Warden Earl said in a grievance response could have prevented him from exhausting these grievances prior to filing this Complaint.

Third, Plaintiff failed to provide any summary judgment evidence to support his misrepresentation claim. Here, Plaintiff points only to the fact that the grievances in question were denied, and "No Further Action" paperwork under AD 19-20 was referenced in a grievance response to SNN-19-00331. A review of AD 19-20 indicates that the phrase "no further action" applies when a grievance extension form is needed – such as when a longer period than usual is needed for a response or to resolve a problem. If an inmate does not agree to the extension, then the inmate agrees that no further action will be taken on the issue. (ECF No. 43-2 at 11). The language of this provision did not change from AD 14-16 to AD 19-20. (*Id*.).

Plaintiff appears to be relying on the same "no further action" phrase in *Ross*, but his reliance is misplaced. Other than the use of the phrase "no further action" at some point during the grievance process in both cases, the cases are quite factually distinguishable. In *Ross*, an inmate complaining of an excessive force incident was attempting to navigate the tension between the Maryland prison system's Internal Investigation Unit (IIU) process for prison staff misconduct and its Administrative Remedy Procedure (ARP). *Ross*, 136 S. Ct. at 1855-62. The case begins with Inmate Blake being taken to the segregation unit by guards Madigan and Ross. During that move, Madigan punched Blake repeatedly while Ross held the handcuffed Blake. *Id*. at 1855. When Blake reported the incident, prison staff believed Madigan to be at fault, and referred Madigan's role in the incident to the IIU. *Id*. The IIU subsequently issued a report condemning Madigan's actions, and he was forced to resign. *Id*. Inmate Blake then brought a § 1983 lawsuit against both Madigan and Ross, winning an award against Madigan. *Id*. Ross, however, raised the affirmative defense that Plaintiff had not exhausted any administrative remedies against him using the ARP process. Blake argued that he thought the IIU investigation served as a substitute for ARP. *Id*.

The Maryland District Court rejected Blake's argument and dismissed the case against Ross for failure to exhaust. *Id.* The Fourth Circuit Court of Appeals reversed, and Ross appealed to the Supreme Court. *Id.* at 1855-56. Discovery in the case revealed that inmates who attempted to pursue an ARP grievance after an IIU referral were routinely told that "no further action would be taken through the ARP process because the matter had been referred to the [IIU]." *Id.* at 1861. Justice Kagan further noted that inmates who refused to accept this jurisdictional denial and appealed the "no further action" finding had at times received a ruling on the merits with no discussion of the ARP/IIU issue. *Id.* at 1862. As a result, the case was remanded for further consideration as to "whether Blake had 'available' remedies to exhaust." *Id.*

No such tension between two prison reporting systems exists here, and the mere fact that the phrase "no further action" was used in *Ross* does not align a set of very dissimilar facts. Based on Plaintiff's own submission, he was not barred from using the ADC grievance policy for SNN-19-00331. Instead, he had the opportunity to file an appeal indicating why he disagreed with Warden Earl's response for SNN-19-00331, which was denied. (ECF Nos. 63-1 at 88, 43-3 at 2). He had an available remedy to exhaust, and he exhausted it. He also exhausted OR-19-01257 and OR-19-01267. That he did not do so for any of these grievances *prior* to filing this case did not render the grievance process unavailable for exhaustion pursuant to *Ross*.

Plaintiff also appears to argue that the grievance process was made unavailable for him due to intimidation. Early in his Response he states, "my entire complaint is about the defendants in a 'conspiracy' to disrupt, retaliate, and 'orchestrate' attacks upon myself because of my [advancement] in grievances and lawsuits." (ECF No. 63-1 at 6) (brackets in original). Later in his Response he alleges that Defendants and "other officials done everything possible short of 'executing the Plaintiff,' the defendants should also be estopped from raising the exhaustion

defense." (ECF No. 63-1 at 19). Plaintiff does not, however, provide any summary judgment evidence to support these allegations. He does not identify any grievance that he was prevented from either filing or exhausting due to intimidation by any named Defendant. Instead, his claims for this case allege that he was retaliated against because of his success in filing and advancing grievances and lawsuits. Plaintiff does not dispute that he filed 52 grievances between October 10, 2018 and May 26, 2020. (ECF No. 63-1 at 43). He also does not dispute that most of those grievances were appealed, as indicated in the record. (ECF No 43-3). Thus, nothing in the summary judgment record indicates that the ADC grievance process was unavailable for Plaintiff to exhaust, either before or after he filed this lawsuit.

Plaintiff has failed to present any summary judgment evidence that he was exempted from the PLRA exhaustion requirement, that he exhausted any relevant grievances prior to filing this lawsuit, or that any PLRA exhaustion exception applies to him. Thus, there is no genuine issue of material fact that he failed to exhaust his administrative remedies for all claims in this case, and Defendants are entitled to summary judgment as a matter of law.[8]

## IV.    CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment on Exhaustion (ECF No. 43) be GRANTED, and that Plaintiff's Third Amended Complaint (ECF No. 13) be DISMISSED WITHOUT PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

---

[8] Because Plaintiff failed to exhaust his remedies, it is not necessary to address Deboer's argument on the merits that he could not have referred Plaintiff to RSVP.

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of January 2021.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE