IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TYLER KLINGENSMITH                                                                                         PLAINTIFF

v.                                          Civil No. 6:19-CV-06126

CLAYTON DEBOER                                                                                           DEFENDANT
(ORCU, Mental Health Case Manager)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Robert T. Dawson, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendant's Motion for Summary Judgment based on qualified immunity. (ECF No. 83).

**I.   BACKGROUND**

**A.  Procedural Background**

Plaintiff filed his Complaint on November 1, 2019. (ECF No. 1). After two failures to follow Court Orders concerning his Amended Complaints (ECF Nos. 7, 9, 10, 11), Plaintiff was directed to file a Third Amended Complaint, and he did so on April 6, 2020. (ECF Nos. 12, 13). Plaintiff alleges that his constitutional rights were violated while he was incarcerated in the Arkansas Division of Correction ("ADC"). (ECF No. 13). Most of Plaintiff's claims, including those that he was retaliated against during his parole hearing and by denial of parole, were dismissed pursuant to preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA") on May 26, 2020. (ECF No. 18). The following personal capacity claims remained for further review:

1

- Plaintiff's condition of confinement claims against Delaney and Hunter regarding the temperature in his segregation cell, the lack of warm clothing, and the lights being kept on around the clock;

- Plaintiff's First Amendment retaliation claims against Hossman, Delaney, Christopher, Mendoza , Whitley and Deboer; and,

- Plaintiff's failure to protect claim against Christopher, Earl, Ball, Hossman, and Hamer.

Defendants filed a Motion for Summary Judgment on August 27, 2020. (ECF Nos. 43, 44, 45). They argued that Plaintiff failed to exhaust his administrative remedies, and that Plaintiff could not prove the merits of his claim against Defendant Deboer. (ECF No. 44 at 1-2). In one footnote in their Brief, Defendants noted that they reserved the right to address the merits of the claims in the event that summary judgment on exhaustion was denied in whole or in part. (ECF No. 44 at n. 1). In a second footnote in their Brief, Defendants state that Defendant "Deboer addresses the merits of the claim against him without benefit of discovery. Thus, if the Court allows the claim against him to proceed, Deboer reserves the right to renew his motion for summary judgment after discovery." (*Id*. at n. 2). Plaintiff filed his Response on October 9, 2020. (ECF Nos. 62, 63). Defendants filed a Reply on October 16, 2020. (ECF No. 64). Plaintiff filed a Sur-Reply on October 26, 2020, and a Supplement on October 29, 2020. (ECF Nos. 67, 68).

A Report and Recommendation regarding the Motion for Summary Judgment was filed on January 15, 2021. (ECF No. 77). Plaintiff filed objections on February 4, 2021. (ECF No. 78). By Order entered on April 3, 2021, Plaintiff's claims were dismissed without prejudice against all Defendants except Defendant Deboer. (ECF No. 79).

Plaintiff's remaining claim against Defendant Deboer alleges that on January 16, 2019, Deboer completed and sent a false RSVP referral to former Defendant Dycus. (ECF No. 13 at 8). Plaintiff alleges that the false RSVP referral was done in retaliation for Plaintiff filing a grievance against Defendant Deboer. Specifically, Plaintiff alleged that he filed a grievance stating that Deboer failed to provide mental health treatment to him for a sexual assault which occurred in the Benton County Detention Center. (*Id.*). In his Third Amended Complaint, Plaintiff did not specify the date he filed the alleged grievance. (*Id.*). Plaintiff alleges the false RSVP referral caused the Parole Board to deny him parole for one year on July 24, 2019.[1] (*Id.*). On May 6, 2021, Defendant Deboer filed a Motion for Findings of Fact and Conclusion of Law on the issue of qualified immunity. (ECF No. 80). The motion was denied on May 7, 2021. (ECF No. 82). After noting that Defendant Deboer had filed this motion, as opposed to a motion for summary judgment on the issue of retaliation or qualified immunity, Judge Dawson gave Defendant Deboer until May 21, 2021, to file a motion for summary judgment on the defense of qualified immunity. (*Id.*).

Defendant Deboer filed his Motion for Summary Judgment on May 20, 2021. (ECF Nos. 83, 84, 85). Plaintiff filed his Response documents on July 14, 2021. (ECF Nos. 89, 90). Defendant Deboer filed a Reply on July 21, 2021. (ECF No. 92). Plaintiff filed a Sur-Reply on August 10, 2021, which was struck from the record on August 11, 2021. (ECF Nos. 94, 95).

### B. Summary Judgment Record

After reviewing the summary judgment record and winnowing though Plaintiff's Gish Gallop approach to argument,[2] his sole remaining claim against Defendant Deboer for First Amendment retaliation distills down to the facts and timeline outlined here.

---

[1] As of the date of this Report and Recommendation, Plaintiff continues to be incarcerated in the ADC. https://doc.arkansas.gov/correction/ inmate search.
[2] Some of Plaintiff's arguments and claims included various alleged conspiracies, references to the Securities and Exchange Commission, "rotating fund" Ponzi schemes, and "closers" or "brokers" for transactions. (ECF No. 90).

Plaintiff was transferred to the ADC on August 27, 2018.[3] Prior to his transfer, he pleaded guilty to charges of Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images or Recordings, and Violation of a Protective Order on August 16, 2018, in Case No. 04CR-18-142, Benton County Circuit Court. Plaintiff was represented by an attorney. The Sentencing Order for the case did not identify him as a sexually dangerous person or require him to register as a sex offender.[4]

Plaintiff met with Defendant Deboer on November 13, 2018. (ECF No. 89 at 6). Defendant Deboer is an unlicensed mental health advisor at the ADC. (ECF No. 83-13 at 1). Plaintiff alleges that Defendant Deboer "refused to refer Plaintiff to a provider [or] a licensed Mental Health advocates such as Mrs. Hamer or a psychologist or psychiatrist, to allow them to determine treatment for sexual assault." (ECF No. 89 at 6). Plaintiff alleges the sexual assault in question occurred in the Benton County Detention Center prior to his incarceration in the ADC. (ECF No. 13 at 8). Plaintiff further alleges that Defendant Deboer told him in "a leering tone" that "a sex offender reporting a sex offense is weird, strange and funny." (ECF No. 89 at 6). Plaintiff alleges he then requested a grievance form from Officer Jennings, who was present at the meeting. Plaintiff alleges he then "left the office on Nov. 13th, 2018 and filed the first step grievance on Deboer for not providing mental health care." (*Id*.).

Plaintiff alleges that, in retaliation for Plaintiff filing that grievance against him on November 13, 2018, Defendant Deboer completed and sent a false RSVP referral to former Defendant Donna Dycus on January 16, 2019. (ECF No. 13 at 8; ECF No. 89 at 6, 27). The Reduction in Sexual Victimization Program ("RSVP") is a sex-offender treatment program for

---

[3] Arkansas Division of Correction, https://doc.arkansas.gov/correction/inmates/, inmate search, last accessed Dec. 17, 2021.
[4] Arkansas Court Connect, last accessed Dec. 17, 2021.

males incarcerated in the ADC. (ECF No. 83-8 at 1). Plaintiff does not provide a grievance number or any other identifying information for this November 13, 2018, grievance, but references it several times in his response documents and provides a variety of citations to it in the summary judgment record, utilizing classic Gish Gallop technique in his Response documents.[5] For the purpose of current and future judicial efficiency in this case, the Court will lay out and address each reference he cites as evidence that he filed a Step One grievance against Defendant Deboer for refusing to provide him mental health care after a sexual assault in BCDC on November 13, 2018.

- At page 4 of ECF No. 89, Plaintiff cites to "'A' @ 3,4 herewith; ECF No. 87 @ exhibit 49 at ¶ 1-19." ECF No 87 is Plaintiff's Motion for Extension of Time to respond to this summary motion. Exhibit 49 does not exist. Exhibit F at page 38 of the motion is a largely illegible grievance form. It appears to be dated November 13, 2018, the topic of mental health is circled, and the name of Deboer may be in the text. There is no grievance number and no writing by the staff to indicate when it was received or what resolution was taken. The ADC grievance policy requires that when a Step One grievance is submitted "the problem-solver or staff member must sign and date the form, giving the inmate back the yellow and pink copies as receipts." ECF No. 83-2 at 6. Thus, there is no evidence indicating that this form was filed with any ADC staff to begin the grievance process. The only exhibits labelled "A" in ECF No. 89 are found at pages 66-67. The document at page 66 is an unsigned grievance waiver for OR-18-01477. Grievance OR-18-1477 addresses Plaintiff's complaint that

---

[5] The Court additionally notes that Plaintiff was expressly advised in multiple Court Orders that he must cite to ECF No. and page number in his response documents. Plaintiff ignored these Orders.

he needed a lock on his property box and does not mention Deboer. (ECF No. 83-5). The document at page 67 is a grievance against Dr. Sells submitted June 10, 2019, which was several months after the RSVP referral. (ECF No. 89 at 67).

- At page 6 of ECF No. 89, Plaintiff cites "'A' @ 5,6 @ ECF No. 87; Exhibit 49 @ ECF No. 87." Exhibit 49 at ECF No. 87 was addressed in the preceding paragraph as nonexistent. There is no Exhibit A in ECF No. 87 at either page 5 or 6. A page labelled Exhibit A at ECF No. 87 page 9 is not an evidentiary document; it is simply additional allegations by Plaintiff.

- At page 7 of ECF No. 89, Plaintiff cites to "'A' at 6 @ ECF No. 87 and; 'A' at 19 at ECF No. 87; exhibit 49 at ECF No. 87." Exhibit 49 and ECF No. 87 at page 6 have been addressed. Page 19 of ECF No. 87 is labelled Exhibit E-1 and consists only of a "Declaration in Support of Tyler Klingensmith" by Gary Klingensmith. This declaration provides a character reference, a description of Plaintiff's family, a description of Plaintiff's love interests prior to his arrest (including a physical description of his usual "type" preference in women), and a statement that he believes Plaintiff is innocent of the charges against him. The declaration does not address, and is not relevant to, the issue of whether Plaintiff filed a Step One grievance on November 13, 2018, against Defendant Deboer.

- At page 16 of ECF No. 89, Plaintiff cites to "'A' at 22 herewith; ECF No. 55 at MHS and ECF No. 87 at exhib. B." Exhibits labelled "A" in ECF No. 89 have been addressed. ECF No. 55 is an 89-page Motion for Reconsideration of Subpoena Duces Tecum filed by Plaintiff. "MHS" is not a page number and

there is no Exhibit labelled MHS. Exhibit B is located at page 16 of ECF No. 87. Exhibit B references grievance SNN-19-00381, which was filed almost a year after the RSVP referral in December of 2019.

- At page 3 in ECF No. 90, Plaintiff cites ECF No. 83-3 and 83-4. ECF No. 83-3 is Plaintiff's ADC Inmate Grievance list filed as an exhibit by Defendant Deboer. Plaintiff argues that "the only 'proof' that plaintiff needed was the grievance sheet (ECF No. 83-3) to prove this [retaliation] claim. . . ." (ECF No. 90 at 10). This grievance list shows Plaintiff filed Grievance OR-18-01243 on October 10, 2018, OR-18-01477 on December 3, 2018, and OR-19-00043 on January 10, 2019. (ECF No. 83-3). Plaintiff states that ECF No. 83-4 is Grievance OR-18-01243. In this grievance, Plaintiff complains that he does not have a lock on his property box. (ECF No. 83-4). In OR-18-01477, Plaintiff also complains that he needs a lock for his property box. (ECF No. 83-5). In OR-19-00043, Plaintiff complains of lack of treatment for plantars warts and ingrown toenails. (ECF No. 83-6). Defendant Deboer is not mentioned in any of these grievances.

Defendant Deboer argues that Plaintiff did not file[6] any grievances against him prior to the RSVP referral on January 16, 2019. (ECF No. 85 at 1-2). He further argues Plaintiff did not file a grievance against him concerning his alleged failure to provide mental health care in November

---

[6] The Court notes that, in another portion of the Brief, Defendant Deboer argues that Plaintiff only appealed three grievances prior to the RSVP referral, and Robert Parker stated in his affidavit that he only reviewed Step Three grievances. (ECF Nos. 85 at 3, 83-8 at 4). As the sole issue before the Court is First Amendment retaliation based on the filing of a grievance, it is not clear why this emphasis on fully appealed grievances was included in the Brief.

7

of 2018 until nearly a year *after* the RSVP referral was entered.[7] (*Id.*) (emphasis in original). In his affidavit, Inmate Grievance Officer Jason Gray states that he reviewed Plaintiff's grievance file for the relevant timeframe, including Plaintiff's Step One informal resolutions, and found no record that Plaintiff submitted a grievance regarding Defendant Deboer's alleged failure to treat him for sexual assault. (ECF No. 83-1).

The summary judgment record reflects systemic ADC confusion as to whether Plaintiff was required to participate in the RSVP program and what type of referral was entered into the system. Robert Parker, ADC Mental Health Administrator, stated in his affidavit that Plaintiff is in prison for stalking and terroristic threatening. (ECF No. 83-8 at 2). According to Parker, some stalking and terroristic threatening charges are considered sex offenses, and some are not. Plaintiff's charges are not. "However, due to a glitch in the ADC's electronic records system, Klingensmith was mistakenly flagged as a sex offender. The flag is not a referral to RSVP." (*Id.*). Plaintiff alleges that Mrs. Holcomb, Classification Supervisor, stated that "back when you . . . received this charge on [stalking] it was [required] that it be coded as a sexual offense." (ECF No. 89 at 26) (brackets in original). Plaintiff also alleges that Dr. Sells told him that he needed to be evaluated and classified as a sex offender and to take RSVP, but then later told him he did not need to do so after Plaintiff appealed to Dr. June Daniels. (ECF No. 89 at 21-23, 57).

Parker states Plaintiff submitted a request form asking if he could be stipulated to take RSVP, and on or about December 2, 2018, Deboer responded and informed him he did not have a referral to RSVP and the mental health department does not stipulate to programming. (ECF No. 83-9). This did not constitute a self-referral. (ECF No. 83-8 at 2). On January 8, 2019, the mental

---

[7] This Grievance is SNN19-00381, signed by Plaintiff on December 13, 2019, and filed at Step One on December 18, 2019. (ECF No. 83-7). It was initially labelled incorrectly as SNN20-00381 in the Defendant Exhibit List, and this incorrect reference also appeared in Jason Gray's affidavit. (ECF No. 83-1). The Court directed the Clerk to correct the exhibit label on the docket on December 16, 2021.

health department received a request from Plaintiff to voluntarily enroll in RSVP. (*Id*.). "Because Klingensmith was flagged in the system as a sex offender, the request was forwarded to RSVP and Klingensmith was placed on a waiting list for the program." (*Id*.). Because Plaintiff requested the enrollment, this was considered a self-referral. (*Id*. at 2-3). Defendant attached Plaintiff's signed RSVP request form as Exhibit 83-10. In it, Plaintiff writes "I need to sign up for RSVP if not on list already, due to my charges and tendencies." (ECF No. 83-10). Plaintiff argues that this form is "a false request was fabricated in the name of plaintiff and used as a 'smoke screen' to make it look as plaintiff sought enrollment in RSVP." (ECF No. 89 at 19). Parker indicates this is the only RSVP referral in Plaintiff's record.[8] (ECF No. 83-8 at 3-4). Parker also indicates the Plaintiff used an inmate request form in June of 2019 to alert the ADC staff that he was not a sex offender and did not need to register as a sex offender. This was investigated and confirmed, and Plaintiff's referral to RSVP was closed in August 2019. (ECF No. 83-8 at 3).

Plaintiff placed the parole board's Prison Release Instrument ("PRI) into the summary judgment record.[9] (ECF No. 55 at 62-63). The Parole Board rendered its final decision denying Plaintiff parole for one year on July 25, 2019. (ECF No. 55 at 64). Plaintiff clarified his main complaint concerning the referral as follows: Plaintiff's "[primary issue(s)] with the [retaliatory] RVP referral" is that "it caused the denial of plaintiffs parole application, because it suggests a [need] for the program." (ECF No. 89 at 34) (brackets in original). The PRI indicates in two

---

[8] Parker also indicates that there is no indication in the ADC's record systems that the unlicensed Deboer was involved in the RSVP referral in any way, had any authority to make a referral, or that Deboer asked or suggested to anyone that another staff member do so. (ECF No. 83-8). Plaintiff argues that Donna Dycus entered the referral at Deboer's request, and Corporal Bledsoe told Plaintiff that Dycus made the referral because Deboer dislikes Plaintiff. (ECF No. 84 at 6). Defendant submitted an affidavit from Donna Dycus, ADC Program Rehab Manager at ORCU, denying that Deboer either asked or suggested that she place a referral to RSVP on Plaintiff's file. (ECF No. 83-14). Deboer filed an affidavit denying telling Bledsoe that he referred Plaintiff to RSVP or that he dislikes Plaintiff. He also states he does not have the authority to make a referral, and did not ask or suggest to Donna Dycus or anyone else that an RSVP referral be placed on Plaintiff. (ECF No. 83-13). As this issue and these facts are not necessary to the analysis in this case, it will not be discussed further.
[9] It is referenced in Defendant's Brief, but not attached as an Exhibit to the motion.

separate sections that the RSVP referral was noted but did not apply to the PRI because he had a low risk on ARORA (Arkansas Offender Risk Assessment). (ECF No. 55 at 62-63). Plaintiff appears to argue that his review of other inmates' parole documents and scores indicate that the RSVP referral was used against him.[10] (ECF No. 89 at 13-15, 35).

## II.   LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d

---

[10] Plaintiff appears to be reverting to some of his earlier arguments that he should have been eligible for parole. As Plaintiff was advised in the screening Report and Recommendation, it is well settled that inmates do not have a constitutionally protected liberty interest in the possibility of parole or probation as required for a due process claim. *Hamilton v. Brownlee*, 237 F. App'x 114 (8th Cir. 2007). Plaintiff also states that Dawn Vandiver explained the process to him in his hearing and told him that "a victims impact is a large reason as to a parole decision but that refusing to take a required program will stop me from obtaining parole." (ECF No. 89 at 62). Plaintiff does not allege that she specifically told him that he was denied parole due to the referral to RSVP, and this statement will not be considered further. Plaintiff also alleges that someone else told him after the meeting that he was denied parole due to his sex offense of stalking and "not taking RSVP." As this statement is contradicted by the PRI form which Plaintiff placed into evidence, it will not be considered further.

10

621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendant Deboer argues Plaintiff's sole remaining claim of retaliation against him is barred by qualified immunity because: (1) Plaintiff did not file any grievances against Defendant concerning a failure to provide mental health treatment until nearly a year *after* the RSVP referral; (2) Defendant had nothing to do with Plaintiff's RSVP referral; (3) Plaintiff's parole denial had nothing to do with the RSVP referral; and (4) even if Defendant had somehow violated Plaintiff's constitutional rights, any such right was not clearly established at the time the events at issue occurred.[11] (ECF No. 85 at 1-2).

When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). It entitles an individual to avoid the burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." *Id*. Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (citing *Saucier v.*

---

[11] Specifically, Defendant argues: "There is no clearly-established precedent that would put Deboer on notice that he could be liable for a computer system error that caused another employee to accept a "self-referral" that Plaintiff would later deny submitting, especially where the referral did not cause a material disadvantage, and clearly did not chill Plaintiff's participation in the grievance procedure." (ECF No. 85 at 17).

*Katz*, 533 U.S. 194, 201 (2001)); *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003).

Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). The court must determine whether the facts demonstrate a deprivation of a constitutional right and, if so, whether the implicated right was clearly established at the time of the deprivation. *Id*. (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). Either step may be addressed first. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff's sole remaining claim is that Defendant Deboer retaliated against him in violation of his First Amendment rights. Plaintiff alleges he filed a Step One grievance against Defendant Deboer on November 13, 2018, complaining that Deboer failed to provide him with mental health treatment following an alleged sexual assault in the Benton County Detention Center. "To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Based on the summary judgment record before the Court, Plaintiff fails to meet all three elements of the First Amendment retaliation test.

There is no dispute that filing a prison grievance is well-established as a protected activity. Plaintiff's claim fails at the first prong of the retaliation test, however, because he failed to provide any evidence in the summary judgment record that he filed a grievance against Deboer on November 13, 2018, or at any other time between November 13, 2018, and the time the RSVP

referral was placed on January 16, 2019. Plaintiff does not provide an ADC Grievance Number for this alleged November 2018 grievance. Instead, Plaintiff argues that his ADC Inmate Grievance List is "the only proof he needed" for his retaliation claim. This ADC Grievance list indicates he filed three grievances prior to the RSVP referral on January 16, 2019. None of these grievances request mental health treatment after an assault; instead, they address the need for a lock on his property box and for treatment of his plantars warts and ingrown toenails. Nor do any of these grievances name Defendant Deboer.

       Plaintiff then points to an unfiled and mostly illegible grievance as evidence. The Supreme Court has expressly recognized a prison's right to create procedural rules for their individual grievance process. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Under ADC grievance policy, an inmate must actually submit the grievance form to the appropriate ADC staff in order to begin the ADC grievance process. (ECF No. 83-2 at 5). There is no evidence in the summary judgment record that Plaintiff did so with this document. Nor is there any allegation by Plaintiff in either of his Response documents for this motion that ADC staff refused to accept the grievance form in question or otherwise made the grievance process unavailable. As discussed above, the ADC Grievance list which Plaintiff characterizes as "the only proof he needed," does not show any grievance filed by him on November 13, 2018, and it shows no grievance filed against Deboer on any date, or any topic, prior to the RSVP referral. Finally, Defendant submitted an affidavit from Jason Gray, Inmate Grievance Coordinator, which states that he reviewed all of Plaintiff's grievance submissions, including his informal Step One grievances, and found no evidence that Plaintiff filed a grievance against Deboer in the relevant timeframe. (ECF No. 83-1). Thus, Plaintiff's allegation that this document is objective evidence that he filed a Step One grievance against Deboer prior to the RSVP referral is contradicted by the summary judgment record.

Plaintiff also refers to an unsigned grievance waiver for OR-18-01477 (which grieves the lack of a lock for his property box), non-existent exhibits and documents, non-evidentiary documents, and a declaration by Gary Klingensmith as evidence. To the extent that any of these documents could be found in the record for this case using Plaintiff's citations, they are not objective evidence that he filed a grievance against Defendant Deboer on November 13, 2018, or on any other date, prior to the RSVP referral on January 16, 2019.

Finally, Plaintiff points to SNN-19-00038, as evidence that he filed a grievance against Deboer for failing to provide mental health treatment following the alleged sexual assault. This document is more readily found in the summary judgment record at ECF No. 83-7. In it, Plaintiff grieves that Defendant Deboer refused to help him with mental health treatment on November 13, 2018. (ECF No. 83-7 at 2). Plaintiff signed this grievance on December 13, 2019, and it was dated for Step One on December 18, 2019. Thus, as Defendant Deboer correctly argues, it was filed almost a year *after* the RSVP referral on January 16, 2019, making it impossible that the filing of SNN-19-00038 triggered the placement of the RSVP referral in retaliation.

Thus, Plaintiff's claim fails at this first prong of the retaliation test because he failed to provide any objective summary judgment evidence that he engaged in the protected activity prior to the placement of the RSVP referral on January 16, 2019. Instead, his scattered allegations are contradicted by the summary record such that no reasonable jury could believe them.

Plaintiff's claim also fails at the second prong of the retaliation test because the RSVP referral was not an adverse action that would chill a person of ordinary firmness from continuing in the protected activity. There is no dispute that the RSVP program is a standard mandatory ADC rehabilitation program for male inmates convicted of certain sex crimes. There is no allegation or proof that the RSVP program itself was in some way unconstitutional. In his Response, Plaintiff

clarifies that his "primary issue" with the RSVP referral was that it had caused his parole application to be denied for one year.

Again, the summary judgment record directly contradicts Plaintiff's assertion because it indicates that the RSVP referral in his record did not adversely affect his parole evaluation. There is no dispute that the Parole Board's Release Instrument ("PRI") in the summary judgment record is the correct controlling document for Plaintiff's parole assessment. Nor is there any dispute that Plaintiff submitted the PRI for review in this case. In two separate sections on the PRI, the form clearly and explicitly states that the RSVP referral was noted but *did not apply* to Plaintiff's parole assessment. Plaintiff has no objective evidence to counter this document, stating only that other individuals had told him that it could have been used against him, and that he had reviewed other inmates' parole documents and believes they indicate that the referral was used against him. Mere speculation or suspicion is insufficient to survive a motion for summary judgment. *National Bank*, 165 F.3d at 607. Thus, Plaintiff's conjecture and belief is insufficient to show that the RSVP referral adversely affected his parole denial. Plaintiff's continued incarceration in the ADC further supports the notations on the PRI stating that the RSVP referral was not a factor in his parole denial. Plaintiff's one-year denial of parole in July 2019 has now extended into 2022 – long after the RSVP referral was removed from his record in August 2019.[12] Finally, based on the Plaintiff's ADC grievance list and the summary judgment record, Plaintiff has clearly not been chilled from filing grievances because of the RSVP referral.

Accordingly, Plaintiff's claim fails at the second prong of the retaliation test because there is no evidence that the RSVP referral was an adverse event or that Plaintiff was chilled from filing

---

[12] The Court also takes judicial notice that Plaintiff was recently sanctioned in another case in this District for sending a written communication to a female attorney which was filed with inappropriate sexual references intended to harass and intimidate. *See Klingensmith v. Cruz*, Case No. 5:19-cv-05185.

15

further grievances. Instead, his allegations are belied by the summary judgment record such that no reasonable jury could believe them.

Third, Plaintiff's claim fails at the third prong of the retaliation test because there is no evidence in the summary judgment record that the RSVP referral was motivated by either by the exercise of a protected activity or by any retaliatory intent. Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Id*. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable).

Even if the Court assumes *arguendo* that Plaintiff filed a grievance against Deboer prior to the RSVP referral, and Deboer was involved in that referral, there is no evidence of retaliatory intent in the summary judgment record. To the contrary, the record indicates that a routine administrative decision was made to refer an inmate flagged as a sex offender to a standard mandatory ADC rehabilitation program for sex offenders.[13] That Plaintiff was mistakenly flagged as a sex offender in the ADC system is not indicative of retaliatory intent. Instead, there is considerable evidence in the record, including that provided and relied upon by Plaintiff, which confirms the existence of systemic confusion in the ADC system as to which stalking and terroristic threat crimes required an inmate to participate in the RSVP program. Plaintiff alleges

---

[13] Indeed, the record indicates that Plaintiff was concerned about whether he needed to take the program, and Defendant Deboer provided a copy of a signed self-referral form indicating that Plaintiff voluntarily asked to take the program. Plaintiff alleges that this form is fraudulent, however, so at the summary judgment stage, the Court will not rely on this evidence for the analysis.

that Mrs. Holcomb, Classification Supervisor, stated that "back when you . . . received this charge on [stalking] it was [required] that it be coded as a sexual offense."  (ECF No. 89 at 26) (brackets in original).  Plaintiff alleges that Dr. Sells told him that he needed to be evaluated and classified as a sex offender and to take RSVP, but then later told him he did not need to do so after Plaintiff appealed to Dr. June Daniels.  (ECF No. 89 at 21-23, 57).  Robert Parker, ADC Mental Health Administrator, stated in his affidavit that Plaintiff is in prison for stalking and terroristic threatening, and some stalking and terroristic threatening charges are considered sex offenses, and some are not.  (ECF No. 83-8 at 2).  Plaintiff's charges apparently are not.  "However, due to a glitch in the ADC's electronic records system, Klingensmith was mistakenly flagged as a sex offender."  (*Id.*).  Parker further indicates that the RSVP referral was accepted only due to the "erroneous [ADC] system notation that Klingensmith is a sex offender. . . ."  (*Id*. at 3-4).  There is no allegation that Defendant Deboer was responsible for that ADC system "glitch."  As such, the summary judgment record indicates that the RSVP referral, assuming it was not a self-referral, was simply a routine administrative decision based a "glitch" in the ADC system which flagged Plaintiff as a sex offender due to the general nature of his charges when he entered the ADC in August 2018.

      Plaintiff argues that he was not a sex offender, and his charges did not make it mandatory for him to participate in the RSVP program.  Based on these facts, Plaintiff believes the RSVP referral must have been retaliatory and part of a general ADC conspiracy to deny him parole.  Again, mere speculation or suspicion is insufficient to survive a motion for summary judgment.  *National Bank*, 165 F.3d at 607; *see also Wilson v. Northcutt*, 441 F.3d 586, 593 (8th Cir. 2006) (cleaned up) (plaintiff's belief that defendant acted from a retaliatory motive is insufficient).

17

Thus, Plaintiff's claim also fails at the third prong of the retaliation test because there is no evidence that the RSVP referral was motivated in any way by retaliatory intent. Instead, his allegations are again contradicted by the summary judgment record such that no reasonable jury could believe them.

Because the summary judgment record contains no evidence of a constitutional violation by Defendant Deboer, he is entitled to qualified immunity. *See e.g., Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) (finding individual defendants entitled to qualified immunity when plaintiff failed to state a constitutional violation).

## IV.   CONCLUSION

For the reasons and upon the authorities discussed above, it is recommended that Defendant Deboer's Motion for Summary Judgment (ECF No. 83) be **GRANTED**, and Plaintiff's case be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of January 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE